UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**STEPHEN M. ANDERSON**,

Debtor.

Case No. **11-61845-11**

# MEMORANDUM OF DECISION

At Butte in said District this 2nd day of April, 2012.

Pending in this Chapter 11 case is the Debtor's Motion (Docket No. 45) to avoid judicial liens of Specialty Forest Products, Inc. ("SFP"), Hardwoods Specialty Products US LP ("Hardwoods"), and Chase Bank USA, N.A. ("Chase") under 11 U.S.C. § 522(f)(1)(A). SFP filed the only objection on the grounds that Debtor is not entitled to claim a homestead exemption because he is a resident of California and intends to sell the real property, and does not reside in it. A hearing on the Debtor's Motion was held at Missoula on March 8, 2012. Debtor Stephen M. Anderson ("Anderson" or "Debtor") appeared and testified, represented by attorney James A. Patten ("Patten") of Billings, Montana. SFP was represented by attorney Harold V. Dye ("Dye") of Missoula, and called real estate broker Doug Deaton ("Deaton") to testify. Exhibits ("Ex.") 1 and A were admitted into evidence. At the conclusion of the parties' cases-in-chief the Court granted the parties time to file simultaneous briefs, which have been filed and reviewed by the Court together with the record and applicable law. This matter is ready for decision. For the reasons set forth below and based on the rule in this district set forth in *In re Schuster*, 2006 WL 2711800, *2 (D. Mont.), the Debtor's Motion will be denied by separate

1

Order on the grounds the asserted homestead was invalid when filed because Anderson was not residing at 80 Rock Place on the date he filed his homestead declaration.  *See also In re Parr*, 2009 WL 3517602 (Bankr. D. Mont.), citing *Schuster*.

This Court has exclusive jurisdiction in this Chapter 13 bankruptcy under 28 U.S.C. § 1334(a).  Debtor's Motion to avoid judicial lien is a core proceeding under 28 U.S.C. § 157(b)(2).

## FACTS

The Debtor is employed as a business consultant by Stronkin Electronics USA LLC ("Stronkin USA"), of which he is the sole owner.  Anderson testified that Stronkin USA has an employment contract with a Chinese counterpart company, Stronkin Electronics.  He testified that Stronkin USA operates out of a leased office located in Cupertino, California, since October of 2010.

Anderson resided in 80 Rock Place in the Eagle Bend golf course development in Bigfork, Montana ("80 Rock Place")[1], until he moved to California where he currently lives with his daughter in an apartment in Cupertino, California which he leases for $3,000 per month. On May 8, 2009, Anderson and his then-spouse Lei Anderson listed 80 Rock Place for sale with broker Deaton under Ex. A at a sales price stated on page 9[2] in the amount of $1,690,000.00. Anderson signed an amendment to the listing agreement on November 9, 2011, extending the listing through May 30, 2012.  Ex. A.

---

[1] Ex. A, the listing agreement between Anderson, his then-spouse, and Deaton, describes the residence at 80 Rock Place as approximately 1.13 acres and 4,800 square footage, with a legal description "Eagle Bend 14, Amended lot 136, 137 & 138."

[2] The listing price line on page 2 of Ex. A is blank.

2

Anderson testified that he listed 80 Rock Place for $1,350,000, but has received no offers. When asked on direct examination his opinion of the value of 80 Rock Place, Anderson answered that he "hoped" it was worth more than $1 million, but when asked if it was worth more than $1,250,000 he answered "absolutely not."

Deaton testified that the listing price has been reduced several times from the initial $1.69 million, and is currently listed at $1.35 million. Under cross examination by Debtor's counsel asking for his opinion of the value of 80 Rock Place, Deaton answered that the value most likely was less than $1 million, and that he has not received any written offers at any price for some time. The market for high end real estate sales in Bigfork remains weak.

Anderson testified that Wells Fargo holds the first lien against 80 Rock Place. Ex. A states at page 9 the payoff amount on the first deed of trust was $1,025,000. Anderson went into default of the payments due under the deed of trust. A Notice of Trustee's Sale, Ex. 1, was recorded in May of 2011, announcing that a trustee's sale of 80 Rock Place would take place on September 9, 2011. Ex. 1 states that the outstanding principal balance on the deed of trust at the time was $1,026,287.01, and the amount necessary to satisfy the loan was $1,211,357.04. For reasons not shown by the record the trustee's sale did not take place on September 9, 2011. Deaton testified that there remain foreclosure notices on 80 Rock Place.

Anderson testified that he recorded a declaration of homestead on 80 Rock Place on September 19, 2011. He testified on rebuttal that when he filed the homestead declaration he intended to keep the property and was trying to refinance it.

Anderson filed his voluntary Chapter 11 petition on September 22, 2011, with his Schedules and Statement of Financial Affairs ("SOFA"). The petition lists 80 Rock Place as

Debtor's street address, but lists his mailing address as 20380 Stevens Creek Blvd., Apt. 213, Cupertino, CA.

Schedule A lists 80 Rock Place as the Debtor's only real property with a current value listed in the amount of $1,250,000.00, encumbered by secured claims in the amount of $1,221,908.84, and indicates that the homestead was recorded on September 19, 2011. Schedule C lists exemptions, including a $250,000 homestead exemption claimed on 80 Rock Place and a value of $1,250,000.

Schedule D lists claims secured by the homestead, including: Chase in the amounts of $26,176.37 and $27,769.09; Hardwoods ($29,309.75); IRS[3] ($12,975.62 and $27,391.00); Wells Fargo Bank ($1,026,287.01); and SFP ($72,000.00).

Schedule I lists Debtor's employment as a consultant at Stronkin USA in Cupertino, California. Debtor pays rent for the apartment in California. Schedule J shows a rent or home mortgage payment in the amount of $2,900. Anderson testified that he has not made any payments to Wells Fargo for 80 Rock Place since 2010. Schedule J lists a $2,900 rent or home mortgage payment. The Statement of Financial Affairs states at item 15 that the Debtor has occupied 80 Rock Place from "8/2003 – Present."

The Notice of Commencement of this case and 11 U.S.C. § 341(a) meeting of creditors was mailed to creditors, including SFP, on September 28, 2011. The Notice (Dkt. 9) includes a "Deadline to Object to Exemptions" which states "Thirty (30) days after the conclusion of the meeting of creditors." The meeting of creditors took place on October 18, 2011, and the Office of U.S. Trustee filed a docket entry on October 24, 2011, that the meeting was held. The 30 day

---

[3]The IRS liens are stated as secured by Debtor's real and personal property.

deadline to object to Debtor's homestead exemption expired and no objection was filed[4].

Debtor filed his Motion to avoid judicial liens on January 24, 2012, pursuant to § 522(f)(1)(A) on the grounds SFP's lien impairs an exemption to which the Debtor would be entitled. The Motion states the amount of SFP's judicial lien as $78,479.75, and is accompanied by copies of default judgments entered in the State of Washington, and a notice of filing foreign judgment in Cause No. DV-09-862C, Montana Judicial District Court, Flathead County. SFP filed an objection contending that the Debtor is not entitled to a homestead exemption because he is a resident of California and does not intend to reside in the homestead property, but instead intends to sell it.

Anderson testified that in his Chapter 11 Plan he proposes to surrender 80 Rock Place to Wells Fargo, but that he would prefer to sell 80 Rock Place because he has ties to Bigfork. He testified that he comes back to Montana on a regular basis, that he sits on non-profit boards and owns commercial property in Montana, and that he has hopes to reside in Montana in the future. On rebuttal Anderson was asked if he could conduct his business from Bigfork instead of Cupertino. He answered that it would entail a lot more travel, although he does travel periodically from California to Montana. Deaton testified that he has seen Anderson in Bigfork, and that furniture and items of clothing still remain at 80 Rock Place.

Under cross examination Anderson testified that the house is "underwater[5]" and he doubts there is any equity left, but he wishes to sell the property at a surplus for which he asserts

---

[4]Debtor amended Schedule C on December 14, 2011, but again no objection to exemption was filed within 30 days thereafter.

[5]The Court presumes that by "underwater" Anderson meant that the amount of the mortgage exceeds the likely sales price of the house.

a homestead exemption, and moves for avoidance of the judicial liens, in order to improve his financial condition.

## DISCUSSION

A debtor's entitlement to claimed exemptions generally is determined as of the date the bankruptcy petition is filed. *In re Cherchione*, 414 B.R. 540, (9th Cir. BAP 2009); *In re Chiu*, 266 B.R. 743, 751 (9th Cir. BAP 2001).

The United States Supreme Court held in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642-44, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992), that where a trustee failed to timely object under Rule 4003(b) to a claimed exemption, the trustee was not allowed thereafter to contest the exemption. The Ninth Circuit discussed *Taylor* in *In re Morgan-Busby*, 272 B.R. 257, 265 (9th Cir. 2002) and held that all objections to exemptions, including those objecting to the value of property subject to exemption, are subject to the time limitation of Rule 4003(b), in order to encourage finality. "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor v. Freeland & Kronz*, 503 U.S. at 644, 112 S.Ct. at 1648. In *Schwab v. Reilly*, __ U.S. __, 130 S.Ct. 2652, 2658, 177 L.Ed.2d 234 (2010), the United States Supreme Court reaffirmed *Taylor* for the proposition, "[i]f an interested party fails to object within the time allowed, a claimed exemption will exclude the subject property from the estate even if the exemption's value exceeds what the Code permits." (Citing *Taylor*, 503 U.S. at 642-43). Such a result, i.e., that an exemption claim that is totally baseless will be allowed if there is no timely objection, has been characterized as "exemption by default." *In re Gardner*, 417 B.R. 616, 621 (Bankr. D. Idaho 2009), citing *Heintz v. Carey (In re Heintz)*, 198 B.R. 581, 583-84 (9th Cir. BAP 1996) (citing cases).

At the hearing the Debtor objected to SFP's questions to Deaton related to whether the Debtor was residing at 80 Rock Place, on the ground the exemption could not be challenged. SFP contends that it can defend a lien avoidance proceeding on the grounds a debtor is not entitled to the asserted exemption even though it did not object to the exemption. The Court overruled the objection.

In *Gardner* the Ho. Jim D. Pappas explained:

> Though Debtors' Rich Land Property is exempt for purposes of their bankruptcy case, this Court, following the lead of the Ninth Circuit Bankruptcy Appellate Panel, has held that the failure of a creditor to timely object to a claim of exemption does not prevent that creditor from challenging the validity of the exemption in defense of a debtor's later motion to avoid its judicial lien. *See In re Conley*, 99.1 I.B.C.R. 7 (Bankr.D.Idaho 1999) (citing *Morgan v. Fed. Deposit Ins. Corp. (In re Morgan)*, 149 B.R. 147 (9th Cir.BAP1993)).
>
> In *Morgan*, the Ninth Circuit Bankruptcy Appellate Panel outlined a four-part test for avoidance of a lien:
>
>> (1) There must be an exemption to which the debtor "would have been entitled" under subsection (b) of § 522;
>>
>> (2) The property must be listed on the debtor's schedules and claimed as exempt;
>>
>> (3) The lien at issue must impair the claimed exemption; and
>>
>> (4) The lien must be either a judicial lien or another type of lien specified by the statute.
>
> *In re Morgan*, 149 B.R. at 151 (citing *In re Mohring*, 142 B.R. 389, 392 (Bankr.E.D.Cal.1992)). In this case, Debtors listed the Rich Lane Property in their schedule C, and claimed it as exempt under Idaho Code § 55–1003. The Dykeman lien and the Campbell lien are both judicial liens and they both impair Debtors' claimed exemption. Accordingly, the second through the fourth elements of this test are satisfied. Here, as is *Morgan*, only the first element of the test is at issue.
>
> Like the debtor in *In re Morgan*, Debtors argue that the validation of their homestead exemption by default satisfies the first element of this test. In *In re*

*Morgan*, the Panel declined to accept that argument. The Panel explained:

> The first element of the test described above is that the debtor "would have been entitled" to the exemption under § 522(b). That the debtor is entitled to the exemption by virtue of § 522(l) does not mean that the debtor "would have been entitled" to the exemption under § 522(b) which provides that a debtor may claim either state or federal exemptions. This language requires the court to find that the debtor is entitled to the exemption under relevant state or federal law in order to authorize the avoiding of a lien under § 522(f). Reliance by the exemption-by-default of § 522( l ) does not satisfy this burden.

*In re Morgan*, 149 B.R. at 151–52. Agreeing with that approach, this Court noted:

> A judicial lien creditor in most cases has no incentive or reason to object to an improper claim of exemption in the early stages of the case and within the time limits required by Rule 4003(b). But the same creditor may have a vital interest in contesting the exemption later—when (and if) the debtor seeks to avoid the judicial lien.

*In re Conley*, 99.1 I.B.C.R. at 7.

> "[A]t a hearing on [a] motion to avoid a lien under § 522(f), the creditor bears 'the burden of proving that the exemptions are not properly claimed.' " *In re Morgan*, 149 B.R. at 152, n. 3 (citing Rule 4003(c)). However, if a lien creditor comes forward with evidence questioning the validity of the exemption, the debtor may need to produce evidence supporting the claim of exemption in order to persuade the court to allow the lien avoidance. *Id*. at 152, n. 4. In this case, Campbells and Dykeman both assert that Debtors' failure to record a notice of abandonment on the Von Elm Property precludes a claim of exemption in the Rich Lane Property. They are correct.

*Gardner*, 417 B.R. at 621-22.

As in determining exemptions, in lien avoidance proceedings under § 522(f) the court must determine whether a debtor would have been entitled to an exemption, in the absence of the lien, as of the date the debtor files bankruptcy[6]. *Morgan,* 149 B.R. at 153, citing *Owen v. Owen*,

---

[6]With the focus on the petition date, the Court does not consider Debtor's statement in his disclosure statement that he intends to surrender 80 Rock Place to the holder of the deed of trust

500 U.S. 305, 310-11, 111 S.Ct. 1833, 1836-37, 114 L.Ed.2d 350 (1991). "The state of affairs considered by the court is hypothetical, not actual." *Morgan,* 149 B.R. at 153; *Owen*, 500 U.S. at 311, 111 S.Ct. at 1836-37. The BAP explained that the court must essentially treat the judicial lien as non-existent until the date of the bankruptcy at which time there is a hypothetical attempt by the trustee to levy on the property. *Morgan,* 149 B.R. at 153; *In re Herman*, 120 B.R. 127, 130 (9th Cir. BAP 1990).

With the burden of proving that the homestead exemption is not properly claimed on SFP, the Court turns to the parties' contentions. The Debtor argues that the Montana homestead statute is to be construed liberally in favor of the debtor, citing *In re Zimmerman*, 2002 MT 90, ¶ 8, 209 Mont. 337, 46 P.3d 599. The Debtor contends that this Court's decisions hold that a temporary absence from the homestead does not require the homestead exemption be disallowed. He argues that although the Debtor works in California he returns to 80 Rock Place from time to time, and that on the date he filed his petition he intended to keep the residence and maintain his residence. Although the house is listed for sale, Debtor argues that he has the right to exempt the sale proceeds under MONT. CODE ANN. § 70-32-216.

SFP argues that at the time Anderson filed his homestead declaration and petition he was employed in California and did not reside at 80 Rock Place, and so was not entitled to claim the homestead exemption. SFP contends that 80 Rock Place had been listed for sale for 28 months, Debtor had not been making payments on the property and instead was renting an apartment in California where he lives with his daughter and works. Because he was not residing at 80 Rock Place when he filed his homestead declaration, SFP argues, Debtor cannot claim a homestead

---

as part of the record for this decision.

declaration on 80 Rock Place under Montana law, citing *Parr*, 2009 WL 3517602 at *4 (citing *Luthje v. Luthje (In re Luthje)*, 7 Mont. B.R. 291, 297 (Bankr. D. Mont. 1989)), and *Schuster*, 2006 WL 2711800 at *2.

This Court set forth the applicable analysis in *Parr*:

> Montana's homestead laws provide that a "homestead consists of the dwelling house or mobile home, and all appurtenances, in which the claimant *resides*..." MCA § 70-32-101. MCA § 70-32-106 further provides that a "declaration of homestead must contain a statement that the person making it *is residing* on the premises and claims them as a homestead...". The foregoing illustrates the general rule, in Montana, that an individual asserting a homestead exemption must reside on the premises. *Luthje v. Luthje (In re Luthje)*, 7 Mont. B.R. 291, 297 (Bankr. D. Mont. 1989).
>
> The definition of "residence" is set forth in MCA § 1-1-215, which reads: Residence -- rules for determining. Every person has, in law, a residence. In determining the place of residence the following rules are to be observed:
>
> > (1) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose and to which he returns in seasons of repose.
> >
> > (2) There can only be one residence.
> >
> > (3) A residence cannot be lost until another is gained.
>
> Notwithstanding the foregoing, this Court has held on several occasions that a temporary absence from a homestead does not require disallowance of a homestead exemption. *See, e.g., In re Schmitz*, 16 Mont. B.R. 512, 515-18 (Bankr. D.Mont. 1998) (finding a valid homestead where the debtor left her home approximately four days per week for employment purposes); *In re Mackenzie*, 16 Mont. B.R. 338, 341-43 (Bankr. D.Mont. 1998) (finding a valid homestead where the debtor temporarily left her claimed residence for employment, rented out residence, but by specific actions, such as leaving her personal property at the homestead property, exhibited an intent to return to residence); *In re Vaughn,* 16 Mont. B.R. 182, 183 (Bankr. D.Mont. 1997) (finding a valid homestead exemption where the debtor did not occupy the marital residence but whose estranged spouse and children continued to occupy the residence); and *In re Loeb*, 12 Mont. BR 524, 527-28 (Bankr. D.Mont. 1993) (upholding the debtor's claimed homestead exemption where the facts did not show that debtor abandoned her

>homestead declaration under applicable Montana law).
>
>The cases of *Schmitz*, *Vaughn* and *Loeb* are factually distinguishable from the instant case because in *Schmitz*, *Vaughn* and *Loeb*, the debtors lived on the property that they were claiming exempt at the time they filed their homestead declaration. The facts in this case are different because Donald was not staying in the martial home when Debtors filed their Declaration of Homestead. This case is more similar to *Mackenzie*, 16 Mont. BR 338, where the debtor filed her declaration of homestead during a short period of time when she rented her home to an individual working on a movie production. However, *MacKenzie* is also factually distinguishable because in that case, other than some clothing and personal effects, debtor's personal property remained at the homestead property. The debtor in *MacKenzie* also returned to the property periodically during the few months that it was rented, and on several occasions, spent the night.
>
>Unfortunately for Debtors, this case is most similar to *In re Schuster*, Bankruptcy Case No. 05-65049. In *Schuster*, the debtor filed a declaration of homestead during a period of time when he was not living on the homestead property but the evidence showed that the debtor planned on returning to his homestead property after his dog died. On appeal, the Honorable Sam E. Haddon in a Memorandum and Order entered September 21, 2006, *see In re Schuster*, Bankruptcy Case No. 05-65049, docket entry no. 78, denied the debtor's homestead exemption because the debtor was not residing on the premises of the property at the time he filed his declaration of homestead.
>
>Like *Schuster*, the issue in the instant case is not whether Donald's absence from the home at 182 Butterfly Lake Lane is an abandonment of his homestead. Rather, the issue is whether Donald was living in the home on the date he filed his homestead declaration. Following the teachings of *Schuster*, it is clear that Donald's declaration of homestead was invalid when filed.

*Parr*, 2009 WL 3517602 at *2-*3.

The instant case is factually distinguishable from *MacKenzie* because in that case, other than some clothing and personal effects, debtor's personal property remained at the homestead while in the instant case, by contrast, Deaton testified that some clothing and personal effects remain at 80 Rock Place but otherwise Anderson lives and works in California. In addition, similar to *Schuster*, although Anderson testified that he hopes to reside in Montana, and possibly

at 80 Rock Place if he negotiates a refinancing, he has not done so.  *Schuster*, 2006 WL 2711800 at *2.

Debtor's argument that he is entitled to a homestead exemption on the proceeds skips the required step of determining whether he was entitled to the exemption when he recorded the declaration.  As Judge Haddon succinctly wrote:

> Under Mont. Code Ann. § 70-32-106, the debtor must have been residing on the premises of the property to be declared at the time of the filing of the declaration.  Here, the Debtor did not "reside" at Unit 42 on October 11, 2005, the date the declaration was recorded.  *See* Mont. Code Ann. § 1-1-215.  He moved out of Unit 42 in 1992 and never moved back in.  On the record, the conclusion is inescapable that the asserted homestead was invalid when filed.  Further inquiry is unnecessary.

*Schuster*, 2006 WL 2711800 at *2.

In the instant case Anderson moved to California in 2010, where he lives with his daughter and works.  He stopped making payments on the note and deed of trust secured by 80 Rock Place.  Foreclosure proceedings commenced on the property.  He listed 80 Rock Place for sale and it remains listed.  Anderson recorded the declaration of homestead on 80 Rock Place on September 19, 2011, when he was living in California with his daughter and working.  Based on the rule of *Schuster*, it is inescapable that the asserted homestead on 80 Rock Place was invalid when filed on September 19, 2011.

Anderson's actions in listing the property for sale, moving to California, and failing to cure the reasons for foreclosure are inconsistent with his stated intent to return to Montana.  His leaving behind some possessions at 80 Rock Place do not tip the scales in his favor when weighed against the record showing that Anderson resides in California with his daughter, where he works.  The Court finds and concludes that SFP satisfied its burden of proving that the

exemption was not properly claimed. *Morgan*, 149 B.R. at 152, n. 3; *Gardner*, 417 B.R. at 621-22. Debtor's argument that he is entitled to exempt the proceeds under homestead law is moot.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above sustaining SFP's objection and denying Debtor's Motion to avoid judicial liens.

BY THE COURT

*Ralph B Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana