## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**STEPHEN M. ANDERSON**,

Debtor.

Case No.  **11-61845-11**

# MEMORANDUM OF DECISION

At Butte in said District this 1ˢᵗ day of August, 2012.

Pending in this Chapter 11 case is confirmation of the Debtor's Amended Chapter 11

Plan and objections thereto filed by Specialty Forest Products, Inc. ("Specialty").  A hearing on

confirmation was held at Missoula on May 10, 2012.  The Debtor Stephen M. Anderson

("Anderson" or "Debtor") filed a Second Amended Chapter 11 Plan on May 8, 2012, and

appeared and testified, represented by attorney James A. Patten ("Patten") of Billings.  Specialty

was represented by attorney Harold V. Dye ("Dye") of Missoula.  Exhibits ("Ex.") 1 and B were

admitted into evidence.  At the conclusion of the hearing the Court granted the parties time to file

briefs, which have been reviewed by the Court together with the record and applicable law.  This

matter is ready for decision.  For the reasons set forth below, Specialty's objections are overruled

and Debtor's Second Amended Chapter 11 Plan (Docket No. 132) will be confirmed.

This Court has exclusive jurisdiction of this Chapter 11 bankruptcy under 28 U.S.C. §

1334(a).  Confirmation of Debtor's Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

The ballot report (Dkt. 134), filed in response to Debtor's Amended Chapter 11 Plan,

reflects and the Court finds that Class IV (unimpaired restitution claims) voted to accept the

Debtor's Amended Plan.  In addition, based on the decisions of the Court sustaining Debtor's objections to claims[1], the Court finds that Class V voted to accept Debtor's First Amended Plan[2], since under 11 U.S.C. § 1126(c) the Plan was accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class.  Four out of five Class V creditors (general unsecured claims less than $1,000) voted to accept the Plan, except for the Class VI ballot of Express Services which elected treatment as a Class V claimant. As a result, the Court finds that at least one class of impaired claims has accepted the plan in satisfaction of 11 U.S.C. § 1129(a)(10).  Class VI accepts the Plan, since 3 of 4 ballots accept the Plan while only Specialty rejects.

## FACTS and PROCEDURAL HISTORY

Stephen Anderson is a businessman and consultant.  He is divorced and lives with his minor child in Cupertino, California.  Anderson testified that he has been in business in China since 1984 when he worked there as an employee with Bausch & Lomb.  He left Bausch & Lomb and began a relationship with a Chinese company in October 2010.  Anderson's divorce also took place in 2010, and he became obligated to pay alimony and support payments in the amount of approximately $6,000 per month.  Currently Anderson is sole owner and chief executive officer ("CEO") for a Chinese electronics company called Stronkin Electronics USA LLC ("Stronkin USA"), headquartered in Cupertino, California.

Anderson started a high-value specialty wood products company in the Flathead Valley of

---

[1]The Court sustained several objections to claims by Order entered on May 11, 2012.

[2]Specialty's attorney Dye stated at the hearing that he does not dispute that conclusion. John McLaurin's Proof of Claim No. 18 was disallowed and he was allowed a claim in the amount of $914.45 by the Court.  Dkt. 140.  Thus his claim and ballot are counted in Class V.

Montana named Artisan's Door & Millwork, LLC ("Artisan's Door"), in which he owned a 55 percent (55%) interest.  He testified that Artisan's Door did well until 2007 when the housing construction industry stopped in the Flathead.  He testified that he tried to find a Chinese partner for Artisan's Door but failed.  Artisan's Door stopped operations in 2009.

Anderson was indicted in Montana for writing bad checks.  He testified that he was trying to keep his Montana company going.  He refinanced his personal home by borrowing from banks, and testified that he got caught "playing the float."  He testified that he pleaded guilty to a criminal offense of issuing a bad check.  Under cross examination he admitted that his offenses were for business obligations, not consumer debt.

Anderson was sentenced to 4 years, with the sentence suspended, plus probation, restitution and fines.  He testified that if he fails to pay the restitution part of his sentence he can be forced to return to Montana and be incarcerated.  Ex. B is the judgment and sentence entered in the Montana Eleventh Judicial District Court, Flathead County, Cause Nos. DC-09-290(C) and DC-10-033(A).  The sentencing court in Ex. B noted Anderson's "ability to maintain employment and make payments toward his court-ordered financial obligations" in sentencing Anderson to a suspended sentence, probation and restitution.  Ex. B states that Anderson must have approval of his supervising officer to reside out of state and to travel.  Ex. B set the amount of restitution at $14,403.93, plus other fees and a $2,000 fine.

The housing bust in the Flathead Valley and Anderson's probation convinced him to file for bankruptcy protection.  He testified that he had no business prospects left in Montana, so he moved to Silicon Valley in California to work in what he described as his Chinese business.  His present employer is Stronkin USA.  Stronkin USA has no other employees.  He testified that he

3

has no other business entities at this time[3].  His work with Stronkin USA requires extensive

travel.  Debtor testified that a Chinese company, identified in his Schedules as "Stronkin

Electronic Co. Ltd ("Stronkin"), pays money to Stronkin USA, but that he has no interest in

Stronkin.

Anderson filed his voluntary chapter 11 petition on September 22, 2011, with Schedules

and Statements signed under penalty of perjury and listing assets totaling $1,548,571.69 and

liabilities totaling $2,328,338.85.  Schedule A lists a single piece of real property located at 80

Rock Place at the Eagle Bend Golf Course in Bigfork, Montana ("80 Rock Place"), at a current

value of $1,250,000, and secured claims in the amount of $1,221,908.84.  Debtor claimed 80

Rock Place as a homestead on Schedule C.  Schedule D lists creditors holding secured claims,

including Wells Fargo Bank secured by 80 Rock Place, and Specialty with a claim in the amount

of $72,000 with the boxes checked indicating Specialty's claim as contingent, unliquidated and

disputed.

Amended Schedule B lists Debtor's 100% interest in Stronkin USA, valued at $3,000.00,

and a receivable due from Stronkin USA in the amount of $100,000.00.  Debtor amended his

Schedule C to claim a homestead exemption in 80 Rock Place in the amount of $250,000, based

on a value of $1,250,000.  Amended Schedule F lists unsecured nonpriority claims totaling

$1,221,159.49.

Debtor's Statement of Financial Affairs ("SOFA") lists Debtor's income from Artisan's

Door in 2009 as $526,990.00, $214,000.00 in 2010 from Stronkin USA and another entity, and

---

[3]He testified that a real property holding company known as Swan River Trading was
awarded to his ex-wife in his divorce, and is now defunct.

4

$160,000 year to date in 2011 from Stronkin.

A claims bar date was set for January 9, 2012.  Claims were filed, including by Specialty which filed Proof of Claim No. 21 on December 5, 2011, asserting a total claim in the amount of $98,964.98, of which $28,091.16 is listed as a claim secured by a foreign judgment from the State of Washington, which was filed in the Montana Eleventh Judicial Court, Flathead County, and thus became a lien against 80 Rock Place.

Debtor filed a motion to avoid judicial liens, including Specialty's, pursuant to 11 U.S.C. § 522(f)(1).  Specialty objected and challenged Debtor's homestead exemption, and that matter was heard on March 8, 2012.  On April 2, 2012, the Court entered a memorandum of decision and order denying Debtor's motion to avoid judicial liens because his homestead exemption on 80 Rock Place was invalid when filed.

Debtor filed his original plan and disclosure statement on January 27, 2012.  The Court set the disclosure statement for hearing on March 8, 2012, and the hearing was continued to April 12, 2012.  Objections to the disclosure statement were filed by creditors, including Specialty, and by the Office of U.S. Trustee ("UST").  Debtor filed his Amended Plan and an Amended Disclosure Statement on March 23, 2012.  The UST withdrew its objections.  No appearance was made at the April 12, 2012, hearing by Specialty in opposition to the amended disclosure statement.  After the April 12, 2012, hearing the Court overruled other creditors' objections and approved the Amended Disclosure Statement, finding that it provided adequate information and satisfied 11 U.S.C. § 1125.  The hearing on confirmation was set for May 10, 2012.

Specialty filed the only objection to confirmation of Debtor's Amended Plan.  Specialty objected because the Amended Plan made no provision for the secured portion of its claim and

because it impermissibly favors the Class IV restitution claims, citing this Court's Chapter 13

decision *In re Dykstra*, 16 Mont. B.R. 419 (1998), and is not proposed in good faith.

      Debtor filed his Second Amended Chapter 11 Plan (Dkt. 132) on May 8, 2012.  He

testified that he filed the Second Amended plan to address and cure Specialty's objections.  The

Second Amended Plan at Article 4.01 places Specialty's junior lien in Class I, which Article 5.01

describes as not impaired.  Article 6.02 provides that Class I claims will be paid by allowing

those creditors to exercise their prebankruptcy contract or judgment lien rights on the residence at

80 Rock Place in accordance with state law.  Debtor testified that the Plan provides for allowing

foreclosure of his 80 Rock Place residence by the lienholders, and that Specialty may exercise its

state law remedies against its security.

      Article 4.04 lists Class IV creditors as holding claims based on the orders of restitution

issued by the state court, including First Interstate Bank, Mike Milliren, Jim Darling, John

McLaurin, Daniel Talago, Eleventh Judicial District Court Flathead County, and the State of

Montana Extradition Unit.  Class IV is listed as not impaired.  Debtor testified that his Plan pays

the Class IV restitution creditors in full, at the rate of $1,000 per month, once the plan is

confirmed.  Ex. 1 is Debtor's cash flow projections showing cash flow to Class IV claims in the

amount of $500 per month through July of 2014.

      Article 6.10 provides that Specialty and other secured creditors "shall retain their liens"

until their claim is satisfied in accordance with the Plan, or until Debtor escrows the disputed

claim amount under paragraph 8.04.  Article 6.11 provides that Specialty and any creditor

holding a lien which is foreclosed as part of the Plan will be allowed an unsecured priority or

unsecured nonpriority claim as appropriate, for any deficiency resulting from the lawful

disposition of collateral following surrender or foreclosure.

Class II is the IRS claim secured by a tax lien, which Article 6.02 provides will be paid $11,039 over 36 months with interest.  Class III are priority tax claims which will be paid $14,778 within interest over 48 months.

Class V and VI claims are listed as impaired.  Class V creditors are those holding unsecured nonpriority claims of less than $1,000.00.  Article 6.06 of the Second Amended Plan provides that they will be paid over 12 months through equal monthly payments.

Class VI creditors, including Specialty, hold unsecured nonpriority claims of $1,000.00 or more.  The Second Amended Plan provides at Article 6.07 on page 7 that the Class VI creditors "will be paid *pari passu* from a general unsecured claim pool of $107,000 through periodic payments of the prorated portion" from July 1, 2012, through December 1, 2016.  Section 6.12 gives the Class VI creditors the election to receive treatment as a Class V claimant, "and shall be allowed and be paid a claim of $1000."

Debtor testified that his purpose in filing his Chapter 11 case is to repay his creditors, and not to evade tax laws or his creditors.  He testified that his Plan pays Class IV restitution creditors in full because without paying the restitution he would not be not able to travel, and that he is threatened with revocation of his probation and incarceration.  He explained that he has experienced problems traveling such as delays, because of allegations that his restitution is unpaid, and that he cannot operate his business, Stronkin USA, and earn income unless he can travel.

Debtor's probation officer is in San Jose, California, overseeing his probation pursuant to an agreement with the State of Montana.  Debtor testified that he has not paid restitution since he

filed his Chapter 11 petition, but that his probation officer has told him that he is not required to pay restitution during his bankruptcy until his Plan is confirmed. However, unless he pays his restitution he cannot travel and could have his probation suspended and be returned to Montana.

Under cross examination Specialty's attorney Dye asked the Debtor why his Plan has a 5 year term and not 10 years. Debtor answered that 5 years is a very long time and he is doing the best he can[4].

Debtor testified that his current salary at Stronkin USA is $20,000 per month, and that in addition he does some contract work for a third entity. Ex. 1 is Debtor's cash flow projections for 2012, 2013, 2014, 2015, 2016 and the first 7 months of 2017. Debtor's beginning monthly income in 2012 is $20,000 per month, increasing on Ex. 1 to $22,000 per month in 2013 and $24,000 per month in 2014. Debtor testified that he negotiated salary increases with the Chinese Stronkin company in 2010, and that the projects he is working on are producing revenue. He hopes to be in business beyond the projections in Ex. 1. Ex. 1 includes Debtor's personal expenses, but not his business expenses. Debtor testified that he has negotiated a reduction in his alimony and support payments to his former spouse of $1,000 per month to $5,000.

Debtor testified that he anticipates that his income and expenses will occur as stated in his Schedules, and that no further reorganization or liquidation will be necessary if his Plan is confirmed. Debtor testified that he is current on all of his monthly operating reports and quarterly fees owed to the U.S. Trustee[5].

_____

[4]He avoided the question posed on cross examination whether he was paying Class VI unsecured creditors only $.08 on the dollar for 5 years.

[5]A notice of delinquent quarterly fees filed by the U.S. Trustee was withdrawn.

8

## DISCUSSION

Debtor has the burden of proof on all essential elements for confirmation. *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 883 (9th Cir. BAP 2002).  Debtor must meet his burden of proof by a preponderance of the evidence under § 1129(a) and (b) of the Code.  *In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 653 (9th Cir.1997), *cert. denied* 522 U.S. 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998).

### A.  Contentions of the Parties.

Debtor contends that Class VI has accepted the Plan and therefore has waived any objection of unfair discrimination under § 1129(b) and the absolute priority rule, and that even if Class VI rejected the Plan the discrimination is not unfair.  Debtor further argues that the Second Amended Plan placed Specialty's claim secured by judicial lien into Class I, which is unimpaired under 11 U.S.C. § 1126(f), so requiring re-balloting or a new disclosure statement would be an idle act because the modification was not material and Class I claims are conclusively presumed to have accepted the Plan.  As to the late modification of the Plan prior to confirmation, Debtor cites 11 U.S.C. § 1127(a) which provides that the proponent "may modify such plan at any time before confirmation . . . ."

With respect to the creditors electing treatment as Class V creditors, Debtor argues that Specialty's objection that their claim should be counted in the full amount is inconsequential because Class V is paid in full, Class VI has accepted the Plan and it can be crammed down as long as § 1129(a) is met.

For purposes of the Class V "convenience class," Debtor argues that such treatment is commonplace in chapter 11 plans, and that it is only logical and rational for a vote as a Class V

9

creditor to be counted in the amount limited by Class V, i.e., $1,000, and not counted in an amount more than their allowed claim.

As to the discrimination, Debtor cites *Zante, Inc. v. Delgado (In re Zante, Inc.)*, 467 B.R. 216 (D. Nev. 2012), as support that his Plan's discrimination is not unfair because there are reasonable, nondiscriminatory reasons for it, namely that without the discrimination he cannot travel, may be incarcerated and would be unable to perform under the Plan, and that combining the restitution claims with the other unsecured claims would result in only a 1% increase in payment to the unsecured claims.  Debtor cites the Ninth Circuit Bankruptcy Appellate Panel decision, *Friedman v. P + P, LLC (In re Friedman)*, 466 B.R. 471, 482, 484 (9th Cir. BAP 2012), that the absolute priority rule is not applicable in individual chapter 11 debtor cases, and his 5-year plan term should be approved.

Specialty objects to the reclassification of its claim to Class I as illegal because there has been no objection filed to its Proof of Claim and it is entitled to treatment as an unsecured creditor with respect to the unsecured portion of its claim, as is Chase Bank.  At the least Specialty requests that a supplemental disclosure statement and re-balloting be required.

Specialty objects that the discrimination against Class VI is unfair and prohibited by this Court's reasoning in *Dykstra*, and cases cited therein, which hold that to allow felons to discriminate in favor of restitution is to allow them to shift the cost of their punishment onto innocent unsecured creditors.  Specialty argues that this being a chapter 11 case while *Dykstra* was a chapter 13 case makes no difference because 11 U.S.C. § 1322(b)(1) incorporates 11 U.S.C. § 1122, and because Debtor's restitution obligations arose out of business debts. Specialty argues that Debtor's argument that Class VI voted to accept the Plan is irrelevant

10

because Specialty and other judgment creditors were removed from Class VI and placed in Class I, which Specialty argues is actually impaired because of its unsecured deficiency and § 1129(b)(1) applies.  Specialty argues that Debtor failed to prove that the Class I creditors will receive the indubitable equivalent of their claims.

In addition to denying confirmation, Specialty argues that Debtor's argument in favor of a five year plan "fairly bristles with bad faith" because of his crimes, perjurious statement that he resided in Bigfork, his proposal to pay restitution claims 100% while paying Class VI creditors 8%, his substantial personal expenses for rent, utilities, dining out and life insurance, and no reason given why he cannot propose a longer plan term which would lessen the discrimination and provide additional recovery for Class VI claims.  Specialty argues that Debtor's alimony and child support will eventually terminate and he could pay another $500,000 to unsecured creditors in a 10 year plan.

Debtor's reply repeats that Class I claims are unimpaired as their state law remedies are unchanged and their rights unaltered, so they are deemed to have accepted the Plan and re-balloting and a new disclosure statement is unnecessary.  Debtor refers to Plan provisions which provide that Specialty and other lien creditors will be allowed deficiency claims as unsecured nonpriority claims.  Debtor argues that his Plan does not change any proof of claim filed, but instead protects the claims by permitting their state law remedies, and allowing unsecured claims for any deficiency.  Debtor repeats both that the requirements of § 1129(b) need not be met, but that his Second Amended Plan satisfies § 1129(b) and does not discriminate unfairly with respect to each class of claims.

Debtor contends that the proposed discrimination satisfies the 4-part test from *In re Wolff*,

11

22 B.R. 510, 512 (9th Cir. BAP 1982) because without the discrimination he is unable to continue

his employment and generate money to pay creditors, and it would take him more than 40 years

to pay the Class VI claims in full.  He argues that the discrimination is proposed in good faith to

pay his creditors, that without the discrimination they will not be paid, and that the degree of

discrimination is directly related to the rationale for the discrimination because the Class IV

restitution claims are approximately 1% of the total of Class VI claims.  Debtor opposes

Specialty's request that the Court require a plan term exceeding the 5-year terms of §

1129(a)(15)(B), arguing that doing so would establish a new criteria.  Debtor argues that he

proposed his Second Amended Plan in good faith to achieve a result consistent with the

objectives and purposes of the Bankruptcy Code, and requests that his Second Amended Plan be

confirmed.

**B. Cramdown.**

The instant case presents the issue of whether the facts require that the Debtor satisfy the

"cramdown" requirements of § 1129(b).  The Court concludes that cramdown is not applicable

under the specific facts of this case.  The Ninth Circuit BAP, in discussing the plain meaning of

the absolute priority rule and holding that it is not applicable in individual chapter 11 debtor

cases such as the instant case[6], gave the following succinct summary of the cramdown:

> The requirements for confirmation of a plan of reorganization are
> generally set out in § 1129, which provides two separate and distinct paths for
> successful confirmation. The first path is mapped out in the sixteen paragraphs of

---

[6]To the extent that Specialty did not abandon its absolute priority objection, it is
overruled.  The undersigned was a member of the BAP majority that rendered the decision in
*Friedman*.  While recognizing a split of authority in this Circuit, *See In re Arnold*, 471 B.R. 578,
581 (Bankr. C. D. Cal. 2012), this Court adopts the holding and reasoning of *Friedman*.  466
B.R. at 478-84.

§ 1129(a). If a plan proponent can demonstrate to the satisfaction of the court that each and every requirement contained in paragraphs (1) through (16) of § 1129(a) has been met, a plan can be confirmed. Of particular note is the requirement of obtaining the consent of each class of creditor as required by paragraph (8) of § 1129(a).

A second path to confirmation is established pursuant to § 1129(b), where absent consent of each class of creditor (as required by § 1129(a)(8)), a plan may still be confirmed by the bankruptcy court if (1) the fifteen remaining paragraphs of § 1129(a) are met, and (2) the plan is, among other things, "fair and equitable." This nonconsensual method of confirmation is referred to as "cramdown." The burden of demonstrating that the plan is "fair and equitable" in order to obtain confirmation falls on the plan proponent.

*Friedman*, 466 B.R. at 480.

The requirement that a plan not discriminate unfairly is found at § 1129(b)(1) which

provides:

Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims that is impaired under, and has not accepted, the plan.

§ 1129(b)(1)[7].

The requirement that the plan "does not discriminate unfairly" is not found in the text of §

1129(a). A fundamental tenet of statutory construction states: "Where Congress includes

particular language in one section of a statute but omits it in another, it is generally presumed that

---

[7]In his brief Debtor cites *In re Dow Corning Corp.*, 255 B.R. 445 (E.D. Mich. 2000), for the proposition that the prohibition of unfair discrimination does not apply when all classes accept a plan. This Court notes the following sentence from *Dow Corning* only to point out that it clearly mischaracterizes § 1129(b)(1): "Section 1129(b)(1) allows for confirmation of a plan against a non-accepting class and allows for discrimination against the non-accepting class only when that discrimination is 'unfair.'" 255 B.R. at 537. On the contrary, § 1129(b)(1) plainly requires that "the plan does *not* discriminate unfairly." (Emphasis added).

Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993) (internal quotation marks and alterations omitted); *In re Jones*, 339 B.R. 360,  364 (Bankr. E.D. N.C. 2006).

It is well settled in this Circuit that the *Wolff* test is applicable in cramdown situations under § 1129(b).  The Ninth Circuit wrote in *Ambanc*:

> Discrimination between classes must satisfy four criteria to be considered fair under 11 U.S.C. § 1129(b): (1) the discrimination must be supported by a reasonable basis; (2) the debtor could not confirm or consummate the Plan without the discrimination; (3) the discrimination is proposed in good faith; and (4) the degree of the discrimination is directly related to the basis or rationale for the discrimination. *In re Wolff*, 22 B.R. 510, 511-12 (9th Cir. BAP 1982). Moreover, separate classification for the purpose of securing an impaired consenting class under § 1129(a)(10) is improper. *See In re Greystone III Joint Venture*, 995 F.2d 1274, 1279 (5th Cir.1991), *cert. denied*, 506 U.S. 821, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992), and *cert. denied*, 506 U.S. 822, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992); *In re Holywell Corp.*, 913 F.2d 873, 880 (11th Cir.1990). In affirming on this element, the district court reasoned that "it is legitimate to pay the relatively small claims of trade creditors more quickly than a large deficiency claim" because "[p]rompt payment of such debts promotes good will and enables a debtor to continue to receive goods and services while implementing its recovery." On the other hand, the continued services of ordinary tradespeople may not always be a commercial necessity for an apartment operator in a large metropolitan area with many other providers of those services. *See In re Barakat*, 173 B.R. 672, 681 (Bankr.C.D.Cal.1994) *aff'd*, 99 F.3d 1520 (9th Cir.1996); *In re Lumber Exchange Ltd. Partnership*, 125 B.R. 1000 (Bankr.D.Minn.), *aff'd*, 134 B.R. 354 (D.Minn.1991), aff'd, 968 F.2d 647 (8th Cir.1992).

115 F.3d at 656-57.

If any class of creditors holding impaired claims had voted to reject Debtor's Plan, then the *Wolff* test would have to be satisfied under *Ambanc*.  *Id.*  The evidence and ballot report show, however, that while Specialty voted to reject Debtor's Plan, all classes voted to accept, and § 1129(b) and the *Wolff* test therefore are not invoked.  A leading commentator explains:

14

> The Code anticipates that not all reorganizations will proceed with the assent of all participants. The first nod in this direction is the majority rules contained in section 1126; although the consent of all impaired classes is necessary for consensual confirmation, a class need not have voted unanimously for it to have consented.
>
> Congress also anticipated that, for diverse reasons, confirmation may be desirable when one or more classes refuse to accept the plan. This will most often be the case when a junior class – such as equity interests – is eliminated; and eliminated class is conclusively presumed to reject the plan, and thus no such plan can satisfy section 1129(a)(8). To confirm such a plan, the proponent must thus proceed under the nonconsensual confirmation provisions of section 1129(b).

7  Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 1129.03 (16th ed. 2011).

In the instant case the classes did not vote unanimously, but Classes IV, V, and VI all voted to accept because more than two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors have accepted the Plan. § 1126(c); *Beal Bank USA v. Windmill Durango Office, LLC (In re Windmill Durango Office, LLC)*, __ B.R. __, 2012 WL 2428908 (9th Cir. BAP 2012); *In re Figter Ltd.*, 118 F.3d 635, 640 (9th Cir. 1997). Class IV's only ballot accepted. Four out of the five ballots submitted in Class V, including by election, voted to accept the Plan[8], more than one-half in number of the allowed claims of such class.

Specialty argues that Class V did not accept because the ballot of Express Services should be counted in the full amount of its filed Proof of Claim No. 25, $21,337.37. The Court disagrees. Express Services made the election to be treated in Class V based on the approved Disclosure Statement and Amended Plan. The Court approved the Disclosure Statement after notice and a hearing at which Specialty failed to appear in opposition. The Amended Plan (Dkt.

---

[8]John McLaurin's remaining claim of less than $1,000 is counted in Class V as accepting, leaving 3 out of 4 ballots (greater than 1/2) accepting in Class VI, and Specialty's sole ballot rejecting. The $795,345.69 claim of Freedom Bank dominates Class VI.

110) provides at Article 6.12:  "Any holder of a Class VI Allowed Claim may elect at the time of filing ballots accepting or rejecting the Plan to receive treatment as a Class V claimant and shall be allowed and be paid a claim of $1,000."  Express Services made the Class V election on its submitted ballot and rejected the Plan, thereby accepting Article 6.12's provision that it "shall be allowed and be paid a claim of $1,000."  Express Services having made its election, its claim is allowed in the amount of $1,000 under Class V.  Specialty will not be heard to speak on Express Services' behalf regarding Express Services' claim and election.

The Second Amended Plan includes the same Article 6.12 ("Class V Election") as the Amended Plan on which Express Services voted.  Therefore, there is nothing with respect to the election to supplement in a new disclosure statement which Specialty demands, and nothing new to require re-balloting[9].

Specialty objects to the Second Amended Plan because it was filed right before the confirmation hearing.  However, under § 1127(a) a plan proponent,

> may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title.  After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

§ 1127(a).

Where a modification of a plan made after solicitation does not adversely affect the treatment of any claim under a plan, and the modification is filed prior to the confirmation

---

[9]Specialty's brief refers to giving the Debtor a "second bite at the apple."  The Court notes that if Express Services were to omit its Class V election in a new ballot, if the Court were to order re-balloting, the result would be that Class VI, including Express Services, still accepts because there would be 3 of 5 ballots accepting, still more than ½ the number of allowed claims of the class required for acceptance under § 1126(c).  Re-balloting would yield a closer result, but ultimately would be futile.

hearing, the bankruptcy court *In re Hawaiian Telecom Communications, Inc.*, 430 B.R. 564, 600 (Bankr. D. Hawai'i 2009), found that due and sufficient notice of the modification was given and the modification did not require additional disclosure under § 1125 or resolicitation of votes under 1126. The Debtor's Second Amended Plan's modification of treatment of Specialty and other judgment lien creditors in the instant case likewise does not require additional disclosure or re-balloting.

The Debtor testified that he modified his Plan in response to Specialty's objections to confirmation in an attempt to cure them. The Second Amended Plan adds Specialty and other creditors holding junior liens on the residence to Class I (Article 4.01); the added Class I creditors are not impaired (Article 5.01); they are allowed to exercise their state law remedies to enforce their prebankruptcy contract or judgment lien rights in accordance with state law (Article 6.02); they retain their liens (Article 6.10); and they are allowed a deficiency claim (Article 6.11). Specialty argues that its claims are impaired and its rights adversely affected by the modification, but offered no evidence at the hearing of any adverse effect. The evidence shows that modification in the Second Amended Plan does not adversely affect its rights.

Specialty next argues, notwithstanding the Plan's Article 5.01 plan statement that "The Class I creditors will not be impaired[,]" that its claim is in fact impaired. A class of claims is impaired under a plan, as provided at 11 U.S.C. § 1124(1) the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest . . . ." Congress intended to define impairment broadly, and any alteration of a creditor's legal rights constitutes impairment. *In re Barakat*, 99 F.3d 1520, 1527 (9th Cir. 1996); *L & J. Anaheim Assocs. v. Kawasaki Leasing Int'l Inc. (In re Anaheim Assocs.)*, 995 F.2d 940,

17

942-43 (9th Cir. 1993).  A class that is not impaired is "conclusively presumed to have accepted the plan."  11 U.S.C. § 1126(f).  *Barakat*, 99 F.3d at 1527.

Article 5.01 of the Second Amended Plan states simply that the Class I creditors will not be impaired, and Article 6.02 provides for payment of Class I claims by allowing Specialty to enforce its state law remedies to enforce their judgment lien rights.  Specialty's legal rights under state law based on its judgment lien are unaltered.  In contrast, the Ninth Circuit found that Kawasaki was impaired when the debtor's plan did away with its state law contractual remedies after default, instead requiring that Kawasaki's collateral be sold.  *L & J Anaheim*, 995 F.2d at 943.  No similar alteration of Specialty's rights occurs as a Class I creditor.

Further, by providing for a deficiency and payment thereof in Class VI, the Debtor's Second Amended Plan supplements Specialty's recovery from its state law claims, without altering Specialty's Class I claim.  The Court finds that Specialty's Class I claim is not impaired, so Class I is conclusively presumed to have accepted the Plan and no solicitation of Class I is required. § 1126(f).

*Dykstra* and *Wolff*, and cases cited therein, are decisions in chapter 13 cases.  It is true that chapter 13 decisions can be informative where the corresponding statutes are identical, such as the good faith confirmation requirement discussed below found at § 1129(a)(3) and § 1325(a)(3) (both stating that "the plan has been proposed in good faith and not by any means forbidden by law").  It is also well settled that the *Wolff* test to determine whether a cramdown under § 1129(b)(1) discriminates unfairly is required in the Ninth Circuit.  *Ambanc*, 115 F.3d at 656.  All classes having accepted Debtor's Plan, as discussed above, this case does not invoke the cramdown.

18

*Wolff*, *Dykstra*, and *In re Limbaugh*, 194 B.R. 488, 491 (Bankr. D. Or. 1996) were

decided based upon 11 U.S.C. § 1322(b)(1) which provides that a plan may:

> (1) designate a class or classes of unsecured claims, as provided in section 1122 of
> this title, but may not discriminate unfairly against any class so designated;
> however, such plan may treat claims for a consumer debt of the debtor if an
> individual is liable on such consumer debt with the debtor differently from other
> unsecured claims[.]

Section 1122 does not include the phrase "may not discriminate unfairly" which is found

in § 1322(b)(1).  Section 1122 provides:

> (a) Except as provided in subsection (b) of this section, a plan may place a claim
> or an interest in a particular class only if such claim or interest is substantially
> similar to the other claims or interests of such class.

> (b) A plan may designate a separate class of claims consisting only of every
> unsecured claim that is less than or reduced to an amount that the court approves
> as reasonable and necessary for administrative convenience.

As noted above, basic statutory construction states that where Congress includes

particular language in one section of a statute but omits it in another, it is generally presumed that

Congress acts intentionally and purposely in the disparate inclusion or exclusion.  *Keene Corp. v.*

*United States*, 508 U.S. at 208, 113 S.Ct. at 2040.  Thus, if Congress had intended in include the

phrase "may not discriminate unfairly" in § 1122(a), it would have included it.  Since Congress

did not include the phrase in § 1122(a), this Court will not infer its inclusion.

This conclusion is buttressed by another tenet of statutory construction which states that

courts should disfavor interpretations of statutes that render statutory language superfluous, and

so long as there is no positive repugnancy between two laws, a court must give effect to both.

*Connecticut National Bank v. Germain*, 503 U.S. 249, 252-54, 112 S.Ct. 1146, 1149, 117

L.Ed.2d 391 (1992).  Both § 1122 and the phrase "may not discriminate unfairly" are found in §

19

1322(b)(1): "[T]he plan may – (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated ...." If § 1122 were construed to include the phrase "may not discriminate unfairly" then the repetition of the phrase in § 1322(b)(1) following the reference to § 1122 would be redundant and superfluous. Accordingly, this Court does not find the phrase or requirement that a plan may not discriminate unfairly within the text or meaning of § 1122.

Specialty objects to the separate classification of the Class IV restitution claims from the other unsecured creditors. Debtor argues that his Plan's discrimination is not unfair because there are reasonable, nondiscriminatory reasons for it, namely that without the discrimination he cannot travel, may be incarcerated and would be unable to perform under the Plan if he fails to pay the restitution in full, and that combining the restitution claims with the other unsecured claims would result in only a 1% increase in payment to the unsecured claims. The United States District Court for the District of Nevada recently explained classification of claims under § 1122(a) in *Zante*:

> Apart from an administrative-convenience exception that does not apply in this case, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Whether claims are "substantially similar" under 11 U.S.C. § 1122(a) is a question of fact; a bankruptcy court has broad latitude in making this determination, which is reviewed for clear error. *In re Johnston*, 21 F.3d 323, 327 (9th Cir.1994).

> Section 1122(a) requires only that claims must be "substantially similar" to be placed into the same class, i.e., it prevents dissimilar claims from being placed into the same class, but it does not prevent substantially similar claims from being placed into different classes. 7 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* § 1122.03[1], at 1122–6 to 1122–7 (Matthew Bender & Co., Inc. 2011) (citing *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 661 (6th Cir.2002)). "To the contrary, the

20

bankruptcy court has substantial discretion to place similar claims in different classes." *In re Dow Corning Corp.*, 280 F.3d at 661 (citing *In re U.S. Truck Co.*, 800 F.2d 581, 585 (6th Cir.1986)).

Section 1122(a) permits substantially similar claims to be classed differently, so long as claims that are not substantially similar are not classed together. See 7 Resnick & Sommer, *Collier on Bankruptcy* § 1122.03 [1], at 1122–6 to 1122–7 (citing *In re Dow Corning Corp.*, 280 F.3d at 661).

Section 1122(b) provides authority for the Debtor's convenience class of claims of less than $1,000 in Class V. The Debtor classed the criminal restitution claims into Class IV. The Debtor's testimony that he must pay the restitution claims in order to be able to travel and generate income to pay all creditors under the Second Amended Plan is uncontroverted. No evidence exists in the record showing that claims which are not substantially similar are classed together. Specialty's deficiency claim, if any, will be unsecured and substantially similar to the other Class VI unsecured nonpriority claims. This Court concludes that it is within its discretion under § 1122(a), as explained in *Zante* and Collier, to conclude that the Debtor may place the restitution claims into a different class than the other unsecured nonpriority claims. *See Zante*, 467 B.R. at 218-19.

### C.  Good Faith.

Specialty's final objection is that the Debtor's Plan "bristles with bad faith" because of his crimes, perjurious statement on his homestead that he resided in Bigfork, his proposal to pay restitution claims 100% while paying Class VI creditors 8%, his substantial personal expenses for rent, utilities, dining out and life insurance, and no reason given why he cannot propose a longer plan term which would lessen the discrimination and provide additional recovery for Class VI claims. The Debtor argues that he proposed his Second Amended Plan in good faith.

21

Section § 1129(a)(3) does not define good faith, but a plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Bankruptcy Code. *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074–75 (9th Cir.2002); *Ryan v. Loui (In re Corey)*, 892 F.2d 829, 835 (9th Cir. 1989).  The requisite good faith is based on a totality of the circumstances on a case by case basis, taking into account the particular features of each plan.  *Sylmar*, 314 F.3d at 1074, 1075; *see also, In re Brotby*, 303 B.R. 177, 197 (9th Cir. BAP 2003).

The evidence in the instant case shows that the Debtor is proposing to pay the restitution claims in Class IV in full, and over a 5 year term proposes to pay $107,000 to unsecured claims in Class VI, including Specialty, in Article 6.07 of the Second Amended Plan.  No dispute exists that the 5 year plan term satisfies the disposable income requirement of § 1129(a)(15)(B).  Specialty objects to such treatment, but the creditor with by far the largest Class VI claim, Freedom Bank, voted to accept.  The Ninth Circuit wrote:  "'[T]he fact that a debtor proposes a plan in which it avails itself of an applicable Code provision does not constitute evidence of bad faith.' [*In re PPI Enters., Inc.*, 228 B.R. 339, 347 (Bankr.D.Del.1998)] (citation omitted) (stating that it is not bad faith to take advantage of a particular provision of the Code for the purpose of capping the amount of a creditor's claim)."  *Sylmar*, 314 F.3d at 1075.  More recently, citing *Sylmar* the BAP wrote:  "[A] debtor's lack of good faith cannot be found based solely on the fact that the debtor is doing what the Code allows."  *In re Lepe*, 470 B.R. 851, 862 (9th Cir. BAP 2012), quoting *Drummond v. Welsh (In re Welsh)*, 465 B.R. 843, 854 (9th Cir. BAP 2012).  Anderson has classified the criminal restitution claims separately as allowed under § 1122 for the purpose of paying them in full, so that he can continue to work and earn income to pay other

claims.  The foregoing authority prevents finding a lack of good faith based on doing what the Code allows.  *Id.*

Specialty's other evidence of lack of good faith is not sufficient.  The Debtor's crimes and criminal sentence occurred before the date he filed his Chapter 11 petition, according to Ex. B. According to the record from the hearing held on March 8, 2012, Debtor recorded his declaration of homestead on September 19, 2011, also prior to the petition date.  Those matters provide no support for a finding that the plan has not been proposed in good faith and not by any means forbidden by law under § 1129(a)(3).  Debtor's budget and cash flow include significant amounts for travel, rent, insurance, and living expenses.  However, those expenses allow the Debtor to earn income in sufficient amounts which make his Second Amended Chapter 11 Plan feasible. Having considered the totality of the circumstances, the Court finds and concludes that the Second Amended Plan has been proposed in good faith and not by any means forbidden by law. *Sylmar*, 314 F.3d at 1074, 1075.

The Court further finds that the Debtor has satisfied his burden of proof to show that he satisfied the confirmation requirements of § 1129(a).  Debtor has shown that his Second Amended Plan is feasible, and is not likely to be followed by the liquidation or the need for further financial reorganization.  § 1129(a)(11).

## CONCLUSIONS OF LAW

1.  This Court has exclusive jurisdiction of this Chapter 11 bankruptcy under 28 U.S.C. § 1334(a).

2.  Confirmation of Debtor's Second Amended Chapter 11 Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

3.  Debtor's Second Amended Plan is a consensual Plan.  All classes of claims voted to accept the Plan.  Class I is not impaired.  The cramdown requirement of § 1129(b) does not apply.

4.  Debtor's separate classification of Class IV restitution claims is permitted under § 1122(a).

5.  Debtor's Plan has been proposed in good faith and not by any means forbidden by law. § 1129(a)(3).

6.  Debtor has satisfied all confirmation requirements of § 1129(a).

**IT IS ORDERED** a separate Order shall be entered in conformity with the above overruling Specialty's objections and confirming Debtor's Second Amended Chapter 11 Plan (Dkt. 132).


BY THE COURT

*Ralph B. Kirscher*

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana